FILED

2020 Sep-15  PM 03:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **SHARKITA B. THOMPSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 5:17-cv-1796-LCB** |
| ) | |
| **MARK T. ESPER,** *in his capacity as* ) | |
| *Acting Secretary of the Army,* ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Sharkita Thompson filed suit against Defendant Mark Esper,[1] Acting Secretary of the Army, for alleged retaliation she experienced after reporting discrimination at her job. Defendant later filed a motion for summary judgment. (Doc. 42). After a thorough review of the filings and evidentiary material, Defendant's motion is granted.

### I.    BACKGROUND

### A. Plaintiff's Employment Background

Plaintiff Sharkita Thompson is an African American woman. (Doc. 1 at 2). She worked for the United States Army Garrison Airfield at Redstone Arsenal from

---

[1] Plaintiff originally sued Ryan McCarthy in his official capacity as Acting Secretary of the Army. He was terminated as a defendant on June 21, 2019.

June 2009 to January 2012 through the STEP Program.[2] (Doc. 41-1 at 26:3-7). At the airfield, Plaintiff's duties included answering phones, giving runway briefings, and performing runway checks. (*Id*. at 26:14-17). The STEP Program was terminated and replaced with the Pathways Program, a similar internship in which students could receive job training or transition into full time work with their respective employers. (*Id*. at 28:1-4) (*see also* Doc. 42 at 4). Alvin Odoms, Director of U.S. Army Garrison, Plans, Training, Mobilization, and Security (DPTMS), transferred her from the airfield to the Garrison's security office in January 2012 through the Pathways Program. (Doc. 41-1 at 27:9-14) (Doc. 41-31 at 2). Plaintiff's supervisors were John Burkhead and Ruby Childers. (Doc. 41-1 at 28:20-21). Odoms was Childers's first level supervisor at DPTMS. (Doc. 41-20 at 2). Childers is a white woman and Odoms is a black man. (Doc. 41-20 at 1; Doc. 41-31 at 1).

**B. Plaintiff's Time in the Security Office**

Plaintiff worked in the office with Childers and security specialists including Angela Harris and Glenda Demma. (*Id*. at 64:15-16). Her colleagues are white women. (Doc. 1 at 4). Plaintiff's official job description was "student trainee (management analyst)," but she unofficially performed the duties of a security specialist. (Docs. 41-4; 41-1 at 53:12-16). Plaintiff's work relationship with Harris

---

[2] Plaintiff describes the STEP Program as a project in which college students are given the opportunity to receive job training. (Doc. 41-1 at 25:22-25).

and Demma became strained after they traveled to Maryland for additional job training in May 2014. (*Id*. at 78:2-6) (Doc. 41-13 at 1). Plaintiff and Demma had a disagreement about where to eat on the trip. (Doc. 41-1 at 77:1-4). When they returned from Maryland, neither of the women spoke to Plaintiff in the office. (*Id*. at 77:25-78:6). Plaintiff confronted Demma and asked why she was not speaking to her and if she had done something wrong in Maryland. (*Id*. at 76:14-20). Demma then went to Ruby Childers to discuss the incident on May 16, 2014. (*Id*. at 76:19-20). Childers sent Plaintiff home and told her that she was "full of it" and would "find someone else and replace [her]." (Docs. 48 at 4; 41-1 at 72:14-20). Plaintiff believed Childers was treating her unfairly because she is black and complained to Alvin Odoms about her behavior. (*Id*. at 97:8-11). On May 21, 2014, Childers told Plaintiff "She will not have someone working for her accusing her of being a racist." (Doc. 41-32 at 6). The next day, Plaintiff filed an informal complaint with the Garrison's equal employment opportunity (EEO) counselor. (*Id*. at 2). She met with the counselor for an intake interview on June 25, 2014. (*Id*.).

After filing the initial complaint about Childers's behavior, Plaintiff's relationship with her co-workers further deteriorated. The three women would "laugh and joke" behind her back. (Doc. 41-1 at 73:19). She also felt wrongfully excluded from meetings, and Childers gave her duties that were more aligned with her skill level, as opposed to the duties of a security specialist. (Doc. 41-32 at 2).

Plaintiff reached a settlement with her employer on August 20, 2014. (*Id*. at 3). The terms of the agreement included providing EEO training to her office. (Doc. 41-33 at 1).

### C. Plaintiff's Separation

Plaintiff graduated from college in August 2014 and completed her Pathways internship. (Doc. 41-1 at 92:19-23). She previously applied for a permanent position as a security specialist in May 2014. (Doc. 41-1 at 133:4–6) (*see also* Doc. 41-6). Plaintiff believed that because she completed the program, she should have been placed in a vacant security specialist position. (*Id*. at 92:12-16). Childers was assigned to manage the selection process to fill the security specialist opening. (Doc. 41-20 at 5). She received a list of qualified applicants from Southwest Civilian Personnel Advisory Center (CPAC) and assembled a panel to rank the candidates. (*Id*.). All the candidates' personal information was redacted during the selection process. (*Id*.). After reviewing the panel's top choices, Childers selected Joseph Smith, a white man, for the position. (*Id*. at 7). Odoms later approved her hiring decision. (Doc. 41-31 at 5).

Plaintiff initially received a proposed Notice of Separation from Childers on August 25, 2014. (Doc. 41-28 at 1). The notice provided she was not able to remain with the Garrison if there was not an available position for her, but she was not immediately separated from her employer. (*Id*.). The notice also provided Childers

was unable to find her a suitable position at Redstone Arsenal. (*Id*.). Plaintiff was informed of her non-selection for the security specialist position on September 17, 2014. (Doc. 41-20 at 5). She received her official separation letter from Odoms on October 15, 2014. (Doc. 41-9 at 1). The separation letter conveyed she was separated from her internship because there was "a lack of a position to permanently place [Plaintiff]." (*Id*.). Her separation became effective on December 2, 2014. (*Id*.).

After she learned of her impending separation, Plaintiff filed a formal complaint of discrimination on November 6, 2014. (Doc. 41-34 at 4). In the complaint, Plaintiff alleged she was discriminated against because of her race and sex. (*Id*. at 1). She also alleged that her separation was retaliation for filing her EEO complaint in May 2014. (*Id*.). On July 19, 2017, the Department of the Army determined she did not experience unlawful discrimination or retaliation as a Pathways intern. (*See* Doc. 41-35). Plaintiff filed suit on October 24, 2017. (Doc. 1). She alleged her former employer subjected her to unlawful discrimination and retaliation. (*Id*. at 3–5). Defendant moved for summary judgment on September 20, 2019. (Doc. 42). In Plaintiff's response to Defendant's motion, she voluntarily withdrew her race discrimination allegations and elected to proceed solely on her retaliation claim. (Doc. 47 at 2–3).

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

## III.   DISCUSSION – MOTION FOR SUMMARY JUDGMENT (DOC. 42)

Defendant moves for summary judgment on Plaintiff's retaliation claim. (Doc. 42 at 18). Defendant argues Plaintiff's claim fails because: (1) she cannot establish a *prima facie* retaliation case; (2) she cannot refute the legitimate, nondiscriminatory reasons for her dismissal; and (3) she cannot establish Defendant's legitimate reasons were a pretext for unlawful retaliation. (*Id*. at 18–23). Plaintiff argues that she not only establishes a *prima facie* retaliation case and that Defendant's decision was pretextual, but has direct evidence of retaliation. (Doc. 47 at 19–26).

Title VII prohibits an employer from retaliating against employees who report discrimination. *See* 42 U.S.C. § 2000e-3. Proof of retaliation can be demonstrated with direct or circumstantial evidence. Plaintiff argues that Childers's statement "She will not have someone working for her accusing her of being a racist," (Doc. 41-32 at 6), is direct evidence that she retaliated against her.[3] Direct evidence of retaliation "reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (citing *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998)). However, the standard by which evidence can be considered "direct evidence" is stringent. *See Merritt v. Dilliard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) ([The Eleventh Circuit has] defined direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption.") To be considered direct evidence, "only the most blatant remarks" will suffice. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999). For example, a general manager's statement that "if it was his company, he wouldn't hire any black people" constituted direct evidence. *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990).

---

[3] Plaintiff also asserts that Childers's alleged racist comments (i.e. calling her a monkey) also constitute direct evidence of retaliation. However, an employee cannot attempt to prove retaliation with evidence that it is a motivating factor for action. Rather, Title VII retaliation claims "require[] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or action of the employer."  Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

The statement that Plaintiff presents as direct evidence of retaliation is, at best, circumstantial evidence. It requires one to make inferences about Childers's intention behind the comment. For example, the statement can be interpreted as Childers's being offended that Thompson thought she was a racist, not that she was going to remove her for reporting discriminatory conduct. Further, Childers made this statement in the office, not when discussing if Plaintiff should be hired on as a security specialist. *See Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (citing *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990)). ("[R]emarks unrelated to the decisionmaking process itself are not direct evidence of discrimination.") Additionally, the comment was made several months before Thompson was not selected for the job. *See Williamson v. Adventist Health Sys./Sunbelt, Inc.*, 372 F. App'x. 936, 940 (11th Cir. 2010) ("To qualify as direct evidence of discrimination, we require that a biased statement by a decision maker be made concurrently with the adverse employment event.") Accordingly, a reasonable factfinder could not find this statement constitutes direct evidence of retaliation.

Plaintiff also argues that Childers's comment establishes "strong circumstantial" evidence of retaliation. (Doc. 47 at 24). To establish a *prima facie* retaliation case under Title VII using circumstantial evidence, a party must show "(1) statutorily protected expression, (2) adverse employment action, and (3) a

causal link between the protected expression and the adverse action." *Taylor v.*
*Runyon*, 175 F.3d 861, 868 (11th Cir. 1999) (quoting *Goldsmith v. City of Atmore*,
996 F.2d 1155, 1163 (11th Cir. 1993)). If a *prima facie* case is made, a defendant
"has an opportunity to articulate a legitimate, non-retaliatory reason for the
challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262,
1266 (11th Cir. 2001). Once a defendant meets this burden, the plaintiff has the
"ultimate burden" of proving that the defendant's reason is pretext for "prohibited,
retaliatory conduct." *Id. See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
802 (1973).

It is undisputed that Plaintiff engaged in protected speech when she filed her
informal EEO complaint. It is also undisputed that she experienced an adverse
employment action when she was separated from her position. However, Defendant
argues that Plaintiff cannot establish a causal connection between when she filed her
complaint and her separation. (Doc. 42 at 18). A causal connection can be
established if "the protected activity and the adverse action are not completely
unrelated." *Wideman v. Wal-Mart Stores*, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998)
(quoting *Meeks v. Comput. Assocs. Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994)).
An alleged victim of retaliation must prove "[the] protected activity was a but-for
cause of the alleged adverse action by the employer." *Trask v. Sec'y*, *Dept. of*
*Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (quoting *Univ. of Tex. Sw.*

*Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Stated plainly, a plaintiff must show "that had she not complained, she would not have been [subject to an adverse employment action]." *Jefferson v. Sewon Am. Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). *See also Thomas v. Cooper Lighting*, *Inc.* 506 F.3d 1361, 1364 (11th Cir. 2007) ("[M]ere temporal proximity, without more, must be 'very close'…A three to four month disparity between the statutorily protected expression and adverse employment action is not enough.") (internal citations omitted).

Construing the facts in the most favorable light to Plaintiff, a reasonable factfinder could not find that Plaintiff satisfied the requisite causal link between when she filed her EEO complaint and when she received her notice of proposed separation. The length of time between her filing and her official separation letter is approximately five months. (*See* Doc. 41-1 at 109:11; Doc. 41-9). This amount of time between the two events is too long to suggest the complaint was the "but-for" cause of Plaintiff's separation. *See Thomas*, 506 F.3d at 1364. While Plaintiff contends that Childers's statement is persuasive evidence of retaliation, the nature of the statement as well as the length of time between the statement and plaintiff's separation would preclude a reasonable juror from finding the required causal link. *See id*.

Even if a reasonable juror could find this was evidence of retaliation, Defendant has the burden of showing that Plaintiff's separation was made for a

legitimate, non-retaliatory reason. *Pennington*, 261 F.3d at 1266. After Childers received a list of qualified candidates from CPAC, each panelist ranked the applicants based on different strengths such as security knowledge and certifications. (*See* Doc. 41-36). The panel members were not given any personal identifying information about the applicants when they received their respective resumes. (Docs. 41-23 at 5; 41-24 at 6; 41-25 at 6). Each member ranked the top five resumes from the list of candidates. (*See* Doc. 41-25 at 6).

Because of an initiative during the Obama administration, qualified veterans were given special preference in the hiring process. (*See* Doc. 41-31 at 5; Doc. 41-2 at 33:20-34:3). Accordingly, Childers testified that she was required to give preference to a qualified veteran before another applicant. (Doc. 41-2 at 33:18-34:3). Odoms, who approved Childers's hiring decision, stated that he told her "to go through the veterans list provided by CPAC and hire immediately so we would not lose a position." (Doc. 41-31 at 6). CPAC provided three lists of candidates, one of which exclusively contained veterans. (*Id*. at 5). Joseph Smith, the candidate that was ultimately chosen to fill the security specialist position, is a qualified veteran. (*Id*. at 33:14-17). He was ranked third on the panelists' list and was hired after the top two candidates turned the position down. (Doc. 41-31 at 5; Doc. 41-2 at 33:14-17). Accordingly, Defendant has offered a legitimate, non-retaliatory reason why Plaintiff was not hired for the security specialist position.

As Defendant has presented a legitimate, non-retaliatory reason for its actions, Plaintiff now has the burden of demonstrating that its reasons are pretextual. *Pennington*, 261 F.3d at 1266. To show a defendant's reason was pretext for unlawful activity, a plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atl. Developers*, *Inc.*, 610 F.3d 1253, 1265 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). *See also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarrelling with the wisdom of that reason.")

Plaintiff contends that Defendant's reasoning behind her separation is pretextual because her employer "used a competitive method for filling the subject vacancy" and could have non-competitively converted her Pathways internship into a permanent position. (Doc. 47 at 23). Further, Plaintiff offers evidence that the Garrison's table of distribution allowances (TDA) provided that her initial appointment was "a funded slot to ultimately reach the GG-11 position, along with a vacant GG-11 position that was awarded to Joseph Smith at the time Thompson was being overlooked." (Doc. 48 at 3; *See also* Doc. 47 at 12).

While Plaintiff may believe that she should have been converted to a position once her Pathways position ended, there is no evidence to support this theory. *See Alvarez*, 610 F.3d at 1266 ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on the reality as it exists outside of the decision maker's head.") Plaintiff's Pathways internship agreement does provide that program supervisors are to assist their interns if a position "offers conversion to the competitive service." (Doc. 41-7 at 1). However, perhaps most importantly, the agreement *explicitly* states, "[i]t is important to remember that eligibility for conversion does not guarantee that the agency will decide to opt for conversion." (*Id*. at 2). Her proposed separation notice further provides she was not guaranteed a competitive service position, per her Pathways Participation Agreement. (Doc. 41-28 at 1). Though Plaintiff argues she could have been converted to a non-competitive permanent position, (*see* Doc. 47 at 23), she provides no evidence that this was a guarantee when she became an intern. Instead, the undisputed evidence illustrates that conversion opportunities for Pathways interns were left to the discretion of the respective agencies.

Similarly, Plaintiff's reliance on the TDA documents does not show that Defendant's reason for hiring someone for the security specialist position is "unworthy of credence." *See Alvarez*, 610 F.3d at 1265. Besides suggesting that these documents support there were positions available to Plaintiff, she provides

little context for these forms. Perhaps most importantly, Plaintiff has not presented any evidence that she applied for any of these alleged vacant positions. Despite Plaintiff's qualifications[4] and her belief that she should have been converted to a permanent position, she has not offered any evidence upon which a reasonable juror could find Defendant's reason for her separation was pretextual. *See Alvarez*, 610 F.3d at 1266 ("We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions…as long as those decisions are not made with a discriminatory motive.") Accordingly, summary judgment is due to be granted as to the Plaintiff's retaliation claim.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's retaliation claim cannot survive summary judgment. Therefore, Defendant's Motion for Summary Judgment (Doc. 42) is **GRANTED**. A separate order will be entered consistent with this opinion.

**DONE** and **ORDERED** this September 15, 2020.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

---

[4] When Plaintiff applied for the Security Specialist position, she reported that she scored a "100" on the questions in the application. (Doc. 41-1 at 110:14–23).